# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| United States of America, | ) | No. 3-06-mj-00049-JDR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Affidavit of** |
| | ) | **James Prichett** |
| Pedro "Manuel" Ofilada | ) | |
| | ) | |
| Defendant | ) | |

I, James Prichett, am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement [ICE], currently employed in the Anchorage, Alaska field office. I have been assigned as case agent in the matter of Pedro "Manuel" Ofilada, and in that capacity declare as follows:

1. I have been a Special Agent with the United States Department of Treasury, United States Customs Service [USCS], and as of March 1, 2003, with ICE, for approximately three and a half years. My primary investigative assignment is the investigation of benefit fraud & immigration violations. I have been involved in numerous immigration cases either as a participating investigator or as a case agent. I have completed the Criminal Investigation Training Program, the Customs Basic Enforcement School, and the ICE Special Agent Cross-Training Program.

2. Any facts or circumstances that are cited in this affidavit are familiar to me through my direct participation in this investigation and as related to me by other law enforcement officers pertaining to this investigation.

3. This affidavit is made in support of a criminal complaint charging Pedro "Manuel" Ofilada with:

    Violation of Title 18, United States Code, Section 1546(a), which makes it unlawful for whoever knowingly uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into

1

or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; and

violation of Title 42, United States Code, Section 408(a)(7)(A), which makes it unlawful for whoever willfully, knowingly, and with intent to deceive, uses a social security account number, assigned by the Commissioner of Social Security (in the exercise of the Commissioner's authority under section 405(c)(2) of this title to establish and maintain records) on the basis of false information furnished to the Commissioner of Social Security by him or by any other person.

4. On July 12, 1996, Pedro "Manuel" Ofilada, using the name Demetrio Legaspi Madriaga, entered the United States as an F31 (married son or daughter of a US citizen) immigrant, pursuant to a petition filed by a United States citizen (USC) parent.

5. On March 4, 2004, Immigration Officer (IO) Timothy Brady received information that a subject had assumed the identity of another person and immigrated to the United States from Philippines as an F-31 on July 12, 1996, pursuant to a petition filed by a USC parent. The subject was identified as Pedro "Manuel" Ofilada. Mr. Ofilada and Mr. Madriaga were neighbors in the Philippines when Mr. Madriaga died on January 28, 1989 from cirrhosis of the liver. Mr. Ofilada allegedly paid the family of Mr. Madriaga, the true beneficiary, to assume his identity.

6. On January 20, 2005, Mr. Ofilada was referred for secondary inspection at the Anchorage International Airport while returning from the Philippines. Mr. Ofilada was a positive hit on a Treasury Enforcement Communications System (TECS) lookout. CBP officers conducted a secondary interview with Mr. Ofilada. During routine questioning, Mr. Ofilada could not provide answers to basic questions. Based on the results of this interview and at the request of Group Supervisor Timothy Staebell of the ICE/Anchorage, the inspection for Mr. Ofilada was deferred to allow time to gather evidence to substantiate fraud.

7. On January 26, 2005, SA Prichett sent collateral requests to both the ICE/Manila office and the ICE/San Jose office regarding undeveloped leads.

8. On March 28, 2005, ICE/San Jose agents questioned R.M. about his brother D.L.M. R. stated that his brother, D. had passed away in the Philippines a few years ago.

9. On June 21, 2005, ICE/Manila agents reported that they had encountered a Philippines National Police (PNP) officer who was a childhood friend and classmate of R.M., one of the sons of D.L.M.. The PNP officer was able to give information on D. indicating that he had lost a hand in a vehicle accident when

the jeep he was driving overturned, resulting in the loss of his hand (unknown if left or right hand). The PNP officer also gave valuable information to the ICE investigators by leading them to the gravesite of D.L..M. in the Tubao local public cemetery. The engraved tombstone on the concrete grave in Tubao local public cemetery shows that D.L.M. died on January 28, 1989. The National Statistics Office (NSO) provided a copy of the death certificate.

10. On February 2, 2006, CBP officers conducted a deferred inspection of Mr. Ofilada. Based on his responses during the interview, Mr. Ofilada was denied entry and held for a mandatory expedited removal hearing.

11. On February 13, 2006, Special Agent Robert Scruton & Special Agent James Prichett administered Miranda warnings and interviewed Mr. Ofilada regarding his true identity and immigration status. Mr. Ofilada admitted his real identity and provided a sworn statement indicating that he used the name D.L.M. to enter the United States.

12. Social Security Administration records reflect an individual using the name D.L.M. and Date of Birth 8/14/1946, applied for an original social security number card on July 7, 1996. On July 15, 1996, D.L.M. was issued SSN xxx-xx-6820.

13. A check conducted by the State of Alaska Department of Revenue, Permanent Fund Dividend Division, Juneau, Alaska, revealed that a person using the identity D.M., SSN xxx-xx-6820, Date of Birth 8/14/1946, applied for and received Permanent Fund Dividend distributions from 2000 through 2005 in the following amounts:
    2000- $1,963.86
    2001- $1,850.28
    2002- $1,540.76
    2003- $1,107.56
    2004- $919.84
    2005- $845.76

14. A further check of the Social Security Administration database revealed that Pedro Ofilada has not been assigned a social security number.

15. Based on these events, there is reasonable cause to believe that Pedro "Manuel" Ofilada did knowingly possess, attempt to use, and use an immigrant visa knowing it to be falsely obtained on July 12, 1996, on January 20, 2005, and on February 2, 2006, in violation of Title 8, United States Code, Sections 1546(a), and on January 26, 2000, January 15, 2001, January 22, 2002, February 26, 2003, January 12, 2004, and January 9, 2005, willfully, knowingly, and with intent to deceive, used a social security account number, assigned by the Commissioner of Social Security on the basis of false information furnished to the Commissioner

of Social Security by him, in violation of Title 42, United States Code, Section 408(a)(7)(A).

                        FURTHER YOUR AFFIANT SAYETH NAUGHT.

                        /s/ JAMES PRICHETT
                        James Prichett
                        Special Agent
                        U.S. Immigration and Customs Enforcement

SUBSCRIBED AND SWORN TO before me this 3rd day of March, 2006, at Anchorage, Alaska.

                        /s/ John D. Roberts  (Seal Affixed)
                        JOHN D. ROBERTS
                        United States Magistrate Judge

4